UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

HARRY ROBINSON,

        Plaintiff,

    v.                                      Case No. 23-cv-1391

DAVID LIPINSKI, et al.,

        Defendants.

## DECISION AND ORDER

Plaintiff Harry Robinson, who is representing himself, is proceeding on a First Amendment access-to-the-courts claim, along with a Fourteenth Amendment due process claim, in connection with allegations that Defendants David Lipinski, Mary Guerra, and Jeff Nicolai lost certain legal documents, which impeded his progress in a criminal matter. Dkt. Nos. 1 & 10. On August 2, 2024, Defendants filed a motion for summary judgment for failure to exhaust administrative remedies. Dkt. No. 20. Because the undisputed facts show that Plaintiff's inmate complaint was properly "rejected" as untimely filed well beyond 14 calendar days of the occurrence without a good cause plea, the Court will grant Defendants' motion and dismiss this case without prejudice.

## BACKGROUND

According to the complaint, on September 22, 2021, Plaintiff submitted a package—a box containing legal material— to the institution for mailing to his family in Georgia. Dkt. Nos. 1 & 10; *see also* Dkt. No. 22, ¶1. Despite submitting a disbursement slip for mailing the package, no funds were ever deducted from Plaintiff's account. Dkt. No. 22, ¶¶2, 11. About two months later, on November 17, 2021, Plaintiff began submitting interview request forms and correspondences

inquiring about the status of his package. *Id.*, ¶3. Based on communications and correspondences from staff, Plaintiff eventually concluded that the package was likely lost. Dkt. Nos. 1 & 10.

Two months after that, on January 18, 2022, Plaintiff filed an inmate complaint about his lost package through the Inmate Complaint Review System (ICRS). Dkt. No. 22, ¶4. The inmate complaint was "returned" with a letter directing him to submit documents related to the issue (i.e., the disbursement request form and the communications to and from institution staff from which Plaintiff concluded that package was likely lost). *Id.*, ¶¶5-6; *see also* Dkt. No. 23-2 at 2. The letter also specifically directed Plaintiff to provide a good cause plea for "why you are filing a late complaint." *See id.* Plaintiff refiled the inmate complaint (RCI-2022-1665) on January 21, 2022 with the requested documents but with no good cause plea for why he waited so long to investigate and file his inmate complaint. Dkt. No. 22, ¶¶7 & 13; *see also* Dkt. No. 23-2 at 11.

Institution Complaint Examiner (ICE) Zeni investigated Plaintiff's inmate complaint. Dkt. No. 23-2 at 2-3. She determined that the date of the incident was September 22, 2021 (the date that Plaintiff submitted the package to the institution for mailing.) *Id.* at 3. ICE Zeni spoke to Plaintiff, who provided no explanation for why he waited until November 17, 2021 to begin checking on the location of his package; and Plaintiff also did not indicate that he was inhibited from using the ICRS at any point after September 22, 2021. *Id.* at 2-3. ICE Zeni spoke to the Property Sergeant, whose manifest from 9/22/21 showed a "heavy" property box to be shipped out for Plaintiff. *Id.* And ICE Zeni spoke to Warehouse Officer, who told her that he could only track UPS shipments in the past three months, so he could not go back to see what happened to Plaintiff's package in September 2021. *Id.* Based on her investigation, ICE Zeni concluded that Plaintiff did not satisfy good cause for the untimely filing, so she "rejected" the inmate complaint as untimely filed almost four months late without a good cause plea. *Id.*; *see also* Dkt. No. 22, ¶¶8, 12-13.

2

Robinson appealed the rejection but still did not offer a good cause plea, so the Reviewing Authority (RA) affirmed the ICE's rejection. Dkt. No. 22, ¶¶9, 14; *see* Dkt. No. 23-2 at 17-18.

**SUMMARY JUDGMENT STANDARD**

Summary judgment is appropriate when the moving party shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). "Material facts" are those under the applicable substantive law that "might affect the outcome of the suit." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute over a "material fact" is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id*. All reasonable inferences are construed in favor of the nonmoving party. *Foley v. City of Lafayette*, 359 F.3d 925, 928 (7th Cir. 2004). The party opposing the motion for summary judgment must "submit evidentiary materials that set forth specific facts showing that there is a genuine issue for trial." *Siegel v. Shell Oil Co*., 612 F.3d 932, 937 (7th Cir. 2010) (citations omitted). "The nonmoving party must do more than simply show that there is some metaphysical doubt as to the material facts." *Id*. Summary judgment is properly entered against a party "who fails to make a showing sufficient to establish the existence of an element essential to the party's case, and on which that party will bear the burden of proof at trial." *Parent v. Home Depot U.S.A., Inc.*, 694 F.3d 919, 922 (7th Cir. 2012) (internal quotations omitted).

**ANALYSIS**

Under the Prison Litigation Reform Act, "no action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until administrative remedies as are available are exhausted." 42 U.S.C. §1997e(a). "To satisfy the exhaustion requirement, an inmate must take each of the steps prescribed by the state's administrative rules governing prison grievances." *See Chambers v. Sood,* 956 F.3d 979, 983 (7th Cir. 2020) (citing *Lockett v. Bonson*, 937 F.3d 1016,

1025 (7th Cir. 2019)). "The primary justification for requiring prisoners to exhaust administrative remedies is to give the prison an opportunity to address the problem *before* burdensome litigation is filed." *Id.* (citing *Woodford v. Ngo*, 548 U.S. 81, 93–95 (2006) and *Schillinger v. Kiley*, 954 F.3d 990, 995–96 (7th Cir. 2020)).

The Seventh Circuit "has taken a strict compliance approach to exhaustion." *Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006). A prisoner is required to "properly use the prison's grievance process prior to filing a case in federal court." *Id.* "To exhaust remedies, a prisoner must file complaints and appeals in the place, and at the time, the prison's administrative rules require." *Pozo v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir. 2002).

Wisconsin has established ICRS to review inmate grievances. Wis. Admin. Code § DOC 310.05. Inmates must file an inmate complaint with the ICE within 14 calendar days of the relevant occurrence. Wis. Admin. Code §§ DOC 310.03(5) and 310.07(2). "At the discretion of the ICE, a late complaint may be accepted for good cause." § DOC 310.07(2). "An inmate shall request to file a late complaint in the written complaint and explicitly provide the reason for the late filing." *Id*. ICE may reject an inmate complaint for a variety of reasons including submitting the complaint "beyond 14 days after the date of the occurrence giving rise to the complaint and provid[ing] no good cause" for extending the time limits. § DOC 310.10(6)(d)-(e). An inmate may appeal a rejection to the Reviewing Authority (RA) within 10 calendar days, and the RA's decision is final. §§ DOC 310.03(5) and 310.10(10).

An inmate complaint that is "rejected" based on a procedural defect does not fulfill the exhaustion requirement. *Conyers v. Abitz*, 416 F.3d 580, 584 (7th Cir. 2005). This is true because "the benefits of exhaustion" can be realized only if the prison grievance system is given a fair opportunity to consider the grievance on the merits. *Woodford v. Ngo,* 548 U.S. 81, 95 (2006). If

noncompliance with the procedural rules "carries no significant sanction," a prisoner who does not want to participate in the prison grievance system "will have little incentive to comply with the system's procedural rules." *Id*. Indeed, the prisoner would be able to file deficient inmate complaints then proceed directly to federal court, wholly bypassing the institution's review of the merits. *Id*.

The undisputed facts show that Plaintiff filed his inmate complaint in January 2022, more than four months after the relevant occurrence in September 2021, without a good cause plea in the initial inmate complaint or his appeal. Plaintiff's inmate complaint and appeal were therefore properly "rejected" and he therefore did not fulfill his exhaustion requirement. Based on these undisputed facts, Defendants have met their burden to show that Plaintiff failed to exhaust administrative remedies prior to bringing this lawsuit.

In response, Plaintiff argues that he did not file until January 2022 because he was required to follow the "chain of command" and attempt to "informally" resolve the issue prior to filing an inmate complaint. Dkt. No. 33. Plaintiff states (without any credible evidence) that he contacted Unit Manager McLaughlin as early as October 22, 2021 to ask about his package and "initiate" the chain of command. *Id*. at 3. However, even if Plaintiff initiated the chain of command on October 22, 2021, he still waited over one month before inquiring about the mailing of his package. Plaintiff knew that funds had not been deducted from his account, so he should have reasonably acted sooner. Plaintiff states that he is not "clairvoyant" and could not have known that his package was not mailed out. But Plaintiff did not need to be clairvoyant to check on his package—he simply had to be diligent—which he was not. Plaintiff also did not provide a good cause plea for his untimely filing in his initial inmate complaint or appeal, as required by § DOC 310.07(2) ("An inmate shall request to file a late complaint in the written complaint and

5

explicitly provide the reason for the late filing"), so ICE Zeni properly rejected it. Toward that end, Plaintiff *still* has no reasonable explanation for why he waited over one month before beginning to check on his package.

Plaintiff implies that his letters and correspondences to staff inquiring about his package satisfied exhaustion. But the Seventh Circuit has taken a "strict compliance" approach to exhaustion; and Plaintiff was required to "file complaints and appeals in the place, and at the time, the prison's administrative rules require." *Dole*, 438 F.3d at 809; *Pozo*, 286 F.3d at 1025. Plaintiff was not entitled to craft his own unique exhaustion process by writing to staff—he was required to timely file an inmate complaint, which he did not do. § DOC 310.07(2).

Next, Plaintiff argues that the "date of occurrence" should be January 2, 2022 (not September 22, 2021). Dkt. No. 33 at 8. However, it's unclear what happened on that date to constitute the date of occurrence and it's unclear why he believes that date is relevant. Further, ICE Zeni's determination that the "date of occurrence" was the date the package was submitted to the institution for mailing is reasonable because that is the date Plaintiff lost control over this package. Plaintiff has provided no legitimate reason to challenge that determination.

Finally, Plaintiff argues that administrative remedies were "unavailable" to him because he was given the "run around" by staff. Dkt. No. 33 at 3-5. Plaintiff states that he asked many people what happened to his package between October 22, 2021 and January 2022 and no one seemed to know the answer. But staff's lack of knowledge about the merits of his claim (i.e. what happened to his package) does not make *administrative remedies* (i.e. the ICRS) unavailable to him. Indeed, Plaintiff still had access to an inmate complaint, which he could have retrieved and filed at any time after September 22, 2021. Staff's lack of knowledge about what happened to his package does not mean that they denied him access to an inmate complaint or other administrative

6

remedies. The remainder of Plaintiff's arguments involve the merits of his case, including the fact that he believes his case should be an exception to the general exhaustion rules, but the Court has no judicial discretion to make a merits-based exception to exhaustion. *See Ross v. Blake*, 136 S. Ct. 1850, 1856-57 (2016).

In conclusion, the ICRS's requirement that an inmate file an inmate complaint within 14 calendar days of the relevant occurrence was intended to prevent precisely what happened here— loss of relevant evidence. Had Plaintiff filed an inmate complaint at any point within three months after submitting his package to the institution, the institution may have been able to follow up with UPS on what happened to his package. But Plaintiff's own dilatory conduct and failure to follow the exhaustion rules prevented full investigation of his inmate complaint and his inmate complaint was therefore properly rejected as untimely filed without a good cause plea. Accordingly, Defendants are entitled to summary judgment and the Court will dismiss this case without prejudice.

## CONCLUSION

For the reasons stated above, Defendants' motion for summary judgment for failure to exhaust administrative remedies (Dkt. No. 20) is **GRANTED** and this action is **DISMISSED without prejudice**. The Clerk of Court is directed to enter judgment accordingly.

Dated in Milwaukee, Wisconsin this 16th day of December, 2024.

_____
STEPHEN C. DRIES
United States Magistrate Judge

This order and the judgment to follow are final. Plaintiff may appeal this Court's decision to the Court of Appeals for the Seventh Circuit by filing in this Court a notice of appeal within **30 days** of the entry of judgment. *See* Fed. R. App. P. 3, 4. This Court may extend this deadline if a party timely requests an extension and shows good cause or excusable neglect for not being able to meet the 30-day deadline. *See* Fed. R. App. P. 4(a)(5)(A). If Plaintiff appeals, he will be liable for the $605.00 appellate filing fee regardless of the appeal's outcome. If Plaintiff seeks leave to proceed *in forma pauperis* on appeal, he must file a motion for leave to proceed *in forma pauperis* with this Court. *See* Fed. R. App. P. 24(a)(1). Plaintiff may be assessed another "strike" by the Court of Appeals if his appeal is found to be non-meritorious. *See* 28 U.S.C. §1915(g). If Plaintiff accumulates three strikes, he will not be able to file an action in federal court (except as a petition for habeas corpus relief) without prepaying the filing fee unless he demonstrates that he is in imminent danger of serious physical injury. *Id.*

Under certain circumstances, a party may ask this Court to alter or amend its judgment under Federal Rule of Civil Procedure 59(e) or ask for relief from judgment under Federal Rule of Civil Procedure 60(b). Any motion under Federal Rule of Civil Procedure 59(e) must be filed within **28 days** of the entry of judgment. Any motion under Federal Rule of Civil Procedure 60(b) must be filed within a reasonable time, generally no more than one year after the entry of judgment. The Court cannot extend these deadlines. *See* Fed. R. Civ. P. 6(b)(2).

A party is expected to closely review all applicable rules and determine, what, if any, further action is appropriate in a case.